*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES EDWARD PERRY, also known as
CHARLES EDWARD PERRY IV,

Defendant-Appellant.

UNPUBLISHED
July 24, 2026
9:50 AM

No. 367915
Berrien Circuit Court
LC No. 2022-003515-FH

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of delivery of 50 grams or more, but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), and possession of methamphetamine with the intent to deliver, MCL 333.7401(2)(b)(*i*). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 17 to 50 years' imprisonment for the delivery of cocaine charge and 13 years and four months to 50 years' imprisonment for the methamphetamine charge. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from a narcotics investigation that occurred on November 11, 2022, in Benton Harbor, Michigan. On that day, Frank Clay, a parolee, was detained on suspicion of driving a stolen vehicle. In exchange for lenient treatment, Clay informed officers that he planned to participate in a drug transaction later that day. In the presence of officers, he eventually spoke on the telephone with defendant to arrange the drug buy.

After the meeting location changed a number of times, and it appeared defendant was getting nervous, officers stopped the vehicle defendant was traveling in after the vehicle was observed violating the traffic laws. Three individuals were present in the vehicle: Rodriguez Russell (the driver), Robert Russell, and defendant. The vehicle was registered to Jennifer Brady, who was Rodriguez's wife. A subsequent search of the vehicle, particularly the windshield wiper cowl in the engine compartment, revealed the presence of a black bag containing 94.63 grams of

-1-

cocaine, 29.23 grams of powdered methamphetamine, a bottle with methamphetamine pills, and 174.14 grams of marijuana. After defendant was convicted, this appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews the trial court's findings of fact in a motion to suppress for clear error. *People v Elliot*, 494 Mich 292, 300; 833 NW2d 284 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Elliot*, 494 Mich at 300-301 (quotation marks and citation omitted). "Whether a court applied the correct constitutional standard is reviewed de novo." *Id*. at 301.

"[T]he court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). "A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion" and its "factual findings are reviewed for clear error." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

The question whether counsel provided ineffective assistance "is a mixed question of fact and law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotations marks and citation omitted). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Id*. at 671-672. "Because no *Ginther*[1] hearing was held, our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A criminal defendant may challenge the proportionality of a sentence and the sentence is reviewed by this Court for reasonableness. *People v Ventour*, 349 Mich App 417, 429; 27 NW3d 660 (2023). "[S]entencing decisions are reviewed for an abuse of discretion . . . ." *Id*. (quotation marks and citation omitted; alterations in original). "A trial court abuses its discretion if the imposed sentence is not proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. ( quotation marks and citation omitted).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). We note that defendant previously filed with this Court a motion to remand with respect to his claims of ineffective assistance of counsel, which this Court denied "without prejudice to a case call panel of this Court determining that remand is necessary[.]" *People v Perry*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 367915). Accordingly, while our review of those claims is for errors apparent on the record now before us, we are not foreclosed from determining, based upon that record, that a remand for further development of the claims is necessary. Upon plenary review of defendant's claims, however, we continue to see no need for a remand to properly adjudicate them.

III. ANALYSIS

On appeal, defendant first argues the trial court erred when it denied defendant's motion for a new trial because the officers' stop of the vehicle was pretextual and unconstitutional. Defendant also contends his trial counsel was ineffective for failing to challenge the stop of the vehicle on all possible grounds. We disagree.

"[B]oth the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009) (quotation marks and citations omitted). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, 574 US 54, 60; 135 S Ct 530; 190 L Ed 2d 475 (2014). "In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999).

In *Whren v United States*, 517 US 806, 808; 116 S Ct 1769; 135 L Ed 2d 89 (1996), plainclothes vice-squad officers in an unmarked car were patrolling a "high drug area" in Washington, D.C. They observed a sport utility vehicle with temporary license plates and youthful occupants waiting an unusually long time at a stop sign. *Id*. When the police did a U-turn to head back toward the SUV, it turned suddenly without signaling and drove off at an "unreasonable" speed. *Id*. The officers followed and stopped the truck, during which they observed plastic bags of what appeared to be crack cocaine in the hands of the defendant, resulting in arrests and federal drug charges. *Id*. at 808-809.

At a pretrial suppression hearing, the defendants argued the stop was not justified by probable cause or reasonable suspicion of drug-dealing activity and that the officer purportedly approaching the SUV to warn the driver regarding his traffic violations was pretexual. *Id*. at 809. The district court denied the motion to suppress, and the federal appeals court affirmed the convictions, holding that "a traffic stop is permissible as long as a reasonable officer in the same circumstances *could have* stopped the car for the suspected traffic violation." *Id*.

On appeal the United States Supreme Court held the temporary detention of a motorist upon probable cause to believe he has violated traffic laws does not violate the Fourth Amendment, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. *Id*. at 812-813. The Court rejected the defendant's argument that the Fourth Amendment test for traffic stops should be whether a reasonable officer would have made the stop for the reason given, noting that subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. *Id*. at 814-815. The Court also dismissed the argument that balancing governmental and individual interests in a traffic stop requires weighing the manner of enforcement, such as stops by plainclothes officers in unmarked vehicles. *Id*. at 815-816.

The Michigan Supreme Court has expressly adopted *Whren*. See *People v Kazmierczak*, 461 Mich 411, 419 n 8; 605 NW2d 667 (2000), overruled on other grounds *People v Armstrong*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 165233); *People v Dunbar*, 499 Mich 60, 66-67; 879 NW2d 229 (2016). Similarly, this Court has recognized the adoption of the rule of law

from *Whren*. See *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009) ("A police officer who witnesses a civil infraction may stop and temporarily detain the offender for the purpose of issuing a written citation."). While defendant argues that we should disregard *Whren* by interpreting Article 1, § 11, of Michigan's 1963 Constitution differently than the Fourth Amendment, this Court must follow the decisions of the Michigan Supreme Court. *People v Strickland*, 293 Mich App 393, 401; 810 NW2d 660 (2011). Accordingly, we have no authority to overrule the Michigan Supreme Court and no ability to give defendant the relief he seeks.

Defendant also contends his trial counsel was ineffective for failing to challenge the stop on pretextual grounds. In order to prove a claim of ineffective assistance of counsel, a defendant must establish that "counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citation omitted).

In the trial court, defendant's counsel moved to suppress on the basis of the stop, but did not argue that the pretextual nature of the stop was unconstitutional. However, had trial counsel challenged the stop on pretextual grounds, the trial court would have denied the motion on the basis of *Whren* and its progeny. Because the motion would have been futile, defendant's trial counsel was not ineffective for failing to challenge the stop on pretextual grounds. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Next, defendant argues the length of the detention and search of the vehicle were unconstitutional, and his trial counsel was ineffective for failing to challenge them. We disagree.

"A traffic stop amounts to a seizure under the Fourth Amendment, and it is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Campbell*, 329 Mich App 185, 196; 942 NW2d 51 (2019) (quotation marks and citation omitted). "Whether a reasonable suspicion justifies a traffic stop depends on a commonsense view of the totality of the circumstances." *Id*. "A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005).

Defendant relies on *Rodriguez v United States*, 575 US 348; 135 S Ct 1609; 191 L Ed 2d 492 (2015), to support his position the search was unconstitutional. In *Rodriguez*, the defendant was stopped by a K-9 officer after being observed veering slowly onto the shoulder of a highway for a second or two and then jerking back onto the roadway. *Id*. at 350-351. Officers detained the defendant until a second officer could arrive to allow for the dog to investigate the outside of the vehicle. *Id*. at 352. The officers discovered methamphetamine, and the defendant was indicted on federal drug charges. *Id*.

Although the district court and federal appeals court concluded the length of the stop was *de minimis* and constitutional, the United States Supreme Court disagreed. *Id*. at 353-355. The Court emphasized that a traffic stop becomes unlawful if it is prolonged beyond the time

-4-

reasonably required to complete the mission of issuing a ticket for the violation. *Id*. at 354-355. The Court also noted that a dog sniff is not an ordinary incident of a traffic stop and lacks a connection to roadway safety. *Id*. at 355-357. The Court held that conducting a dog sniff without reasonable suspicion after the completion of the stop is unconstitutional. *Id*. at 357.

Defendant's reliance on *Rodriguez* is misplaced. As an initial matter, obviously, no dog was employed to locate the drugs in this case. The specific holding of *Rodriguez*, which relates to dog sniffs, is inapplicable. However, the general holding of *Rodriguez*—that a traffic stop becomes illegal if prolonged unreasonably—does apply to the facts of this case.

Had the only information officers possessed in this case been the observation of the traffic violation, defendant's argument would be a strong one. However, officers were not simply investigating a traffic violation; rather, the officers had information from Clay that the vehicle was being used to transport drugs. Once the vehicle was stopped, the officers observed a bottle of tequila on the back floorboard. While defendant contends the bottle was not in plain view such that it would be obvious if it was open, the presence of the bottle did permit officers to expand the scope of their investigation.

Defendant's argument, however, patently fails in the assertion that as parolees, the occupants of the vehicle were not subject to warrantless search. There is no dispute that each of the occupants (i.e., the Russell brothers and defendant) of the vehicle were on parole. As parolees, the occupants of the vehicle were subject to warrantless search. MCL 791.236(19) ("The parole order must require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer . . . The prisoner shall sign the written consent before being released on parole."); *Samson v California*, 547 US 843,852, 857; 126 S Ct 2193; 165 L Ed 2d 250 (2006) (stating that "parolees have severely diminished privacy expectations by virtue of their status alone" and "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee"). Defendant has no counter to this authority other than to urge the Court to create a new body of law that rejects both Michigan statute and caselaw. We reject the suggestion.

We further note that the search of the vehicle is what yielded the fruits of the drug investigation. To challenge the search, defendant has to show he had a privacy interest in the vehicle. *People v Mead*, 503 Mich 205, 212-214; 931 NW2d 557 (2019) ("To invoke the Fourth Amendment's protections, a defendant must first establish that he had a legitimate expectation of privacy in the area searched.").

There is no dispute defendant did not own the vehicle in question, which was owned by Brady, the wife of Rodriguez Russell. Because defendant did not own the vehicle, he did not have standing to challenge the search under traditional principles of Fourth Amendment jurisprudence. See *Mead*, 503 Mich at 213 ("In the usual case, a passenger will not have a legitimate expectation of privacy in someone else's car."). Nevertheless, defendant contends this Court should find defendant had standing as the "target" of the investigation, contending that rather than hold that the owner of the vehicle is the individual with standing, this Court should conclude the individual who is the target of the investigation should have standing.

This proposition was explicitly rejected in *People v Smith*, 420 Mich 1, 17-20; 360 NW2d 841 (1984). Instead, the Court held that "before a defendant may attack the propriety of a search or seizure, that search or seizure must have infringed upon an interest of the defendant which [the Michigan constitution] was designed to protect." *Id*. at 28. In other words, "the court must decide whether the defendant had an expectation of privacy in the object of the search and seizure and whether that expectation is one that society is prepared to recognize as reasonable." *Id*. Moreover, this Court has held that "when the stop of a vehicle is legal, a passenger with no property or possessory interest in the vehicle does not have standing to contest the search of the vehicle." *People v Earl*, 297 Mich App 104, 108; 822 NW2d 271 (2012), overruled in part on other grounds *People v White*, 501 Mich 160, 164 n 2; 905 NW2d 228 (2017).

Defendant contends he had a possessory interest in the vehicle because it was loaned to him by Brady when she left the country. The trial court did not address this issue. But even if defendant could show a possessory interest such that he had standing to challenge the search, defendant is still confined by the fact that as a parolee, he was subject to warrantless search. Accordingly, defendant's argument that his trial attorney was ineffective for failing to raise the issue is without merit, because defendant cannot show a reasonable probability that the outcome would have been different if his counsel raised the issue. *Frazier*, 478 Mich at 243.

Defendant also argues on appeal that during the trial, officers gave improper drug profile testimony. According to defendant, the officers gave testimony that went to defendant's ultimate guilt, which entitles him to a new trial. We disagree.

Drug profile evidence is defined as an "informal compilation of characteristics often displayed by those trafficking in drugs." *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995) (quotation marks and citation omitted). "[D]rug profile evidence is not admissible as substantive evidence of guilt." *Id*. at 241. "On the other hand, courts generally have allowed expert testimony to explain the significance of items seized and the circumstances obtaining during the investigation of criminal activity." *People v Murray*, 234 Mich App 46, 53; 593 NW2d 690 (1999). Expert testimony from law enforcement officers may be employed by prosecutors "to aid the jury in understanding the evidence in controlled substance cases." *Id*.

Detective Robert Shepherd was qualified as an expert in narcotics investigations and drug trafficking. He testified that it was his opinion that the drugs found in the vehicle were for sale and distribution on the basis of the amount and variety of drugs found, as well as the absence of drug paraphernalia. Contrary to defendant's argument, Detective Shepherd did not opine that defendant was guilty on the basis of his drug profile characteristics. Rather, Detective Shepherd's testimony explained to the jury the significance of the items seized and how it related to defendant's intent to sell. The testimony did not, however, speak to the ultimate question of defendant's guilt. See *Murray*, 234 Mich App at 53.

As noted, "[t]o prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Frazier*, 478 Mich at 243. "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023).

Trial counsel was not ineffective for failing to object or seek a limiting instruction. Regarding the first prong of an ineffective assistance claim, trial counsel's performance did not fall below an objective standard of reasonableness because the testimony from the officers was not improper drug profile testimony. As noted above, the testimony from Detective Shepherd explained the significance of the items found in the vehicle. Detective Shepherd opined the items seized were for sale and distribution because officers found "more than what the average human could consume." Detective Shepherd also noted that the drugs were divided up, suggesting they were for sale and not personal consumption. None of the statements opined on defendant's guilt. It was not objectively unreasonable for trial counsel to not object.

Moreover, it appears from a review of the trial record that defense counsel was just as interested in eliciting the drug profile testimony from officers as the prosecutor. In fact, defense counsel used the questions to draw a distinction between what the officers believed was a typical drug profile with what was discovered in this case. For example, defense counsel asked Lieutenant Marc Hopkins about drug dealers being likely to have packaging materials or large amounts of cash on their person. When asked by defense counsel, Lieutenant Hopkins denied such items were found. In addition, during closing argument, defense counsel reiterated the lack of certain characteristics in the case. It is clear that defense counsel's strategy was to highlight the difference between defendant and the "typical" drug dealer. See *Yeager*, 511 Mich at 488 ("Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy.").

But even if we were to agree with defendant that trial counsel should have objected to the officers' testimony, defendant cannot show that but for the error, it is reasonably probable that the result of the trial would have been different. *Frazier*, 478 Mich at 243. In addition to the testimony from the officers, Clay testified regarding the drug transaction he intended to complete with defendant concerning 3 ounces of cocaine. Clay's testimony, when coupled with the evidence seized and other background information provided by officers, provided ample grounds to convict defendant. Defendant cannot show a reasonable probability that, absent the testimony, the result would have been different.

Defendant also challenges the length of his sentence as unreasonable and disproportionate. According to defendant, the trial court improperly relied on the statements from the prosecutor relating to drug-related deaths in Berrien County and failed to take into account defendant's remorse. We disagree.

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." [*People v Posey (On Remand)*, 349 Mich App 199, 204; 27 NW3d 137 (2023) (quotation marks omitted), quoting *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).]

"An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing

the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). "The key test is whether the sentence is proportionate to the seriousness of the matter." *Posey (On Remand)*, 349 Mich App at 204. When a defendant challenges a within-guidelines sentence, there is a presumption of proportionality "through which the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). "[T]o overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

Defendant first contends the sentences were unreasonable because they were made on the basis of irrelevant and objectionable information. In response to the prosecutor's statements regarding drug deaths in Berrien County, the trial court stated:

> The Court agrees this is more than just a crime of possessing the drugs and delivering the drugs to another people—another person. This affects the safety of individuals, the safety of our community, the safety of our society in general. It's not excused by a drug addiction. It's not excused by poverty, or mistakes, or anything else.

Contrary to defendant's suggestion, the trial court did not fashion its sentence on the basis of the alleged drug deaths in Berrien County. The trial court was permitted to consider the interests of society as a whole, such as the impact on the community, when fashioning a sentence. *People v Rodriguez*, 61 Mich App 42, 50; 232 NW2d 293 (1975). Moreover, the statement by the prosecutor was made in response to defendant's mitigation package submitted for sentencing, in which defendant asserted his crime did not involve any violence or direct victims. See *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977) (stating the prosecutor is entitled to respond to the issues raised by the defendant).

Defendant also contends the trial court did not consider his remorse when fashioning the sentence. While defendant is correct the court did not specifically mention defendant's claimed remorse during sentencing, the court did state that it read defendant's mitigation package and remarked that defendant had a "significant background that involves abuse at a young age." After taking into consideration defendant's mitigation, the court stated:

> The Court has to consider here, as indicated earlier, the nature of the offense and the defendant's background. Now, counsel indicates that he has many people here in support of him. That's true, and that is certainly a benefit that you have in your life that not everybody does. All right?
>
> But it also kind of underscores the fact that you have other options. You were not in the same desperate place that a lot of people claim to be in when they made choices such as this. This is a form of repetitive behavior for you. I think Mr. Engram used the word peaceful, that you were a peaceful person. However, your prior convictions would indicate otherwise.

As indicated, you just went to prison for the Michigan convictions to which you pled guilty[. A]ssault with intent to murder[, t]hat would indicate something other than a peaceful disposition. Carjacking, that would indicate something other than a peaceful disposition. Armed robbery, same thing. Assault with a dangerous weapon, and felon in possession of a firearm. Okay?

So a lot has been said. The Court's taken all of this into consideration. I do consider the *Milbourn* case. I'll consider the *Posey* case also. The—your criminal background, the fact that you have—were still on parole at the time these offenses were committed, and all of this indicates nonetheless a significant sentence be imposed[.]

Contrary to defendant's argument, the trial court took into account all of the information presented during sentencing. Defendant provides no authority for the proposition that the court must specifically, individually address every point of mitigation raised by him during sentencing. Here, the court stated it read and considered all of the information presented before sentencing. Accordingly, the court did not abuse its discretion when it sentenced defendant.

Lastly, in defendant's Standard 4 brief, he argues the trial court erred when it concluded he lacked standing to challenge the search of the vehicle. Defendant also argues the trial court erred when it concluded Clay's information was sufficient to provide probable cause. We disagree.

We have already addressed defendant's argument regarding standing. As defendant did not own the subject vehicle, he did not have standing to challenge its search. But even if he did, defendant cannot escape the fact that, as a parolee, he was subject to warrantless search.

Turning to defendant's other Standard 4 brief argument, one exception to the warrant requirement is a search of an automobile on the basis of probable cause. *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014) (quotation marks and citation omitted). "The existence of probable cause is determined by the totality of the circumstances." *Id*. "An informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report, and they can be used to determine whether probable cause exists." *Id*. (quotation marks and citations omitted); see also *Levine*, 461 Mich at 179-180 (stating that probable cause from an informant's tip is evaluated on the basis of the totality of the circumstances).

Clay's reliability was established through his and the officers' testimony. Clay admitted to being a participant in a criminal drug conspiracy which subjected him to criminal liability. Such statements tended to add to his reliability. See *In re Forfeiture of US Currency*, 172 Mich App 200, 207; 431 NW2d 437 (1988) ("Statements against penal interest have a high indicia of reliability."). Moreover, officers were able to corroborate the statements Clay provided to them. Clay knew the day and time when defendant would be traveling to Benton Harbor and stated he would be in a vehicle registered in Flint. Clay also described the meeting locations where the transaction was to take place. Clay's information was subsequently confirmed by surveillance vehicles at the meeting locations.

Assuming for the purposes of argument that Clay was not reliable as an informant and his tip did not provide probable cause, defendant has not addressed why it would not have been harmless error to conclude Clay provided probable cause. See MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."). As noted above, defendant was on parole when he was stopped by the officers. As a parolee, defendant was subject to warrantless searches. MCL 791.236(19). Even if Clay's information was insufficient to provide probable cause, the officers were entitled to search on the basis of defendant and the other passengers' parole status.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace